## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| | § | |
| IN RE | § | Case No. 16-10300-tmd |
| | § | |
| WESTECH CAPITAL CORP., | § | Chapter 11 |
| | § | |
| Debtor | § | |
| | § | |

## MOTION OF ERIC STEINHAFEL, ROBERT CLEMENT, RICK SCHOTTENFELD, AND ARCH APLIN TO APPOINT CHAPTER 11 TRUSTEE

TO THE HONORABLE TONY M. DAVIS:

Eric Steinhafel, Robert Clement, Rick Schottenfeld and Arch Aplin, equity security holders and parties in interest in this case ("Movants"), move for appointment of a Chapter 11 trustee for Debtor Westech Capital Corp. ("Debtor," "Westech" or "Company") and would show as follows:

### JURISDICTION

1.     This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. ¶ 105.  It is a core proceeding pursuant to 28 U.S.C. § 157.

### INTRODUCTION

2.     Movants seek the appointment of a trustee under 11 U.S.C. § 1104, which provides for two distinct grounds for appointment, both of which warrant the appointment of a trustee in this case.  First, there is cause, including fraud, dishonesty, incompetence, and gross mismanagement of the affairs of Debtor before and after the commencement of the case, or similar cause.  Second, the Debtor and its control persons are untrustworthy and riddled with

conflicts such that an independent trustee is in the best interest of the estate, the equity holders, the parties in interest and the creditors.

3.      This Chapter 11 Proceeding was filed by conflicted control persons, who seek to maintain control of the Debtor, despite the fact that the certified schedules of the Debtor confirm that Debtor is presently: (1) a non-operating entity; (2) has substantial cash on hand; and (3) has scheduled assets that substantially exceed its listed debts. (*See,* Doc. ## 5, 6, and 8.) Movants contend that the primary purpose of the Chapter 11 filing is not to reorganize and obtain a "fresh start" for the Debtor, but rather to absolve the conflicted control persons of substantial personal liability.

4.      Movants are non-executive, non-Board equity interest holders of Debtor. As such, they are interested persons, and the relief requested herein is in the interest of the estate and the equity security interest holders.

5.      The control persons of Debtor include Gary Salamone ("Salmone"), CEO and the representative of Westech who executed declaration Form 202, and Robert Halder ("Halder"), former President and COO of Westech, who executed the corporate resolution authorizing bankruptcy as Secretary of Westech. Both Salamone and Halder, however, were involved in a pre-petition scheme that diverted the business of Westech for their personal benefit and caused the demise of the Company. Under these circumstances, the appointment of an independent trustee would allow for proper evaluation and prosecution of claims (including pending lawsuits) and would benefit the estate, the equity holders, and the other parties in interest.

## FACTUAL BACKGROUND

6.      On February 25, 2016, three of Movants filed a shareholder derivative action in Delaware, complaining that the Company's management willfully denuded the Company and

absconded with its business, as more fully discussed below (Cause No. 12047, or the "Derivative Lawsuit"). (The petition in the Derivative Lawsuit, with its Exhibits A-O, is attached as **Exhibit 1**.) At the Defendants' request, answer dates in the Derivative Lawsuit were extended. Before the answer became due, however, the Debtor's Voluntary Petition was filed by the very actors who caused the demise of the Company for their personal benefit, and whose conduct, along with that of their counsel, is the subject of the Derivative Lawsuit.

7.      On March 14, 2016, the Chapter 11 Petition was filed. Schedules associated with the petition show that the company is balance sheet solvent and is not operating. The apparent purpose for the filing is to protect the insiders from pending lawsuits and other claims arising from their misconduct, which is perpetuated in the Chapter 11.[1]

8.      The fraud, dishonesty, incompetence, gross mismanagement, and other misconduct of Salamone, the CEO, and Halder, the former President and COO and now Secretary, includes:

A.      Entering into an agreement whereby they purported to cancel Halder's non-compete with the Company[2] – in violation of the Company's by-laws,[3] their fiduciary duties, and the Delaware Chancery Court's Status Quo Order[4] – after which Halder left the Company, hired away the employees of the Company's wholly owned subsidiary, and took the Company's business to a competitor[5] – causing the Company to cease operations.

---

[1] There is not even a pretext of reorganization. The Debtor's gross revenue from business for all of 2015 through the bankruptcy filing in March of 2016 was $0. (Doc. #5, p. 1.) The debtor's principal assets are held in an "Uncle Bob's Storage" facility in Austin. (Doc. #5, p. 2; Doc. #6, p. 7.)
[2] Exhibit 1, ¶¶ 36-37 and Exhibit K (Cancellation of Employment Agreement).
[3] Exhibit 1, ¶ 13.
[4] Exhibit 1, ¶¶ 26-27 and Exhibit E (Order Maintaining Status Quo).
[5] Exhibit 1, ¶ 48.

      B.     Failing to pursue claims for breach of fiduciary duty against Halder[6] in connection with his diversion of business away from the company.  The Delaware Chancery Court, observed *sua sponte*:

> It is somewhat difficult to understand why what would seemingly be non-controversial actions, such as holding board meetings or preventing former employees from soliciting current employees away from Westech in contravention of an agreement with the company, have not been pursued by Westech's fiduciaries.[7]

      C.     Halder filing suit against Westech in the State District Court of Travis County, Texas to, among other things, obtain a declaration that the Cancellation Agreement was "a binding and enforceable agreement."[8]  Westech, under the control of Halder and Salamone then refused to contest such suit.[9]

9.     Salamone and Halder were aided and abetted in this conduct by the Greenberg Traurig law firm ("Greenberg")[10] – the largest unsecured creditor of the estate.  (Doc. #1, p. 5.) Greenberg represented Salamone, Halder, and Westech.[11]

10.     As a result of the insiders' and the Company's failure to protect its interests, the Derivative Lawsuit was filed.  Movants believe the Derivative Lawsuit to have a value that is many-times in excess of the Estate's liabilities.  In addition, as noted above, the sworn schedules establish that the company is balance-sheet solvent.  (Doc. #5.)  Both facts establish that equity holders are "in the money," especially if the Derivative Lawsuit is pursued by a trustee not beholden to the Defendant control persons.

---

[6] Halder signed the resolution authorizing the filing of the Chapter 11. (Doc. #2).
[7] Exhibit 1, ¶ 53.
[8] Exhibit 1, ¶ 57.
[9] Exhibit 1, ¶ 60.
[10] *See e.g.,* Exhibit 1, ¶¶ 29, 33, 39, and 45.
[11] Exhibit 1, Exhibit I (May 20, 2014 letter from Greenberg to Court of Chancery in Delaware) ("I write on behalf of Defendants Robert W. Halder, Gary Salamone, and Mike Dura, the incumbent directors of Westech…"). Further, Greenberg was attorney of record in the proceeding before the Court of Chancery referenced in the May 20 letter.

11.     Further, Salamone has been paid a salary of $350,000 per year, including for the period after which the Company ceased operating.  (Doc. #6, p. 10.)  Such payments may constitute a preference or fraudulent transfer.

12.     The documented conduct that is the subject of the Derivative Lawsuit includes:

A.     Salamone has served on Westech's Board of Directors and acted as CEO of the Company since January 2013.[12]

B.     Halder served as President and COO of Westech and Interim Chief Operating Officer of Tejas, a wholly owned subsidiary of the Company.[13]

C.     Westech's Bylaws, provide, in pertinent part, that "[a]ny officer or agent elected or appointed by the Board of Directors may be removed either for or without cause by a majority of the directors represented at a meeting of the Board of Directors at which a quorum is represented…"[14]

D.     Halder entered into an Employment Agreement with Westech on October 1, 2011 (the "Halder Employment Agreement").[15]  The Halder Employment Agreement appointed Halder as President and COO of Westech.[16]

E.     The Halder Employment Agreement required Halder to devote substantially all of his working time and attention to the businesses of Westech and Tejas. Halder could only pursue other personal investments and business interests if such actions did not convert, usurp or limit a corporate opportunity of Westech.[17]

---

[12] Exhibit 1, ¶ 5; Doc. #6, p. 10.
[13] Exhibit 1, ¶ 9. Tejas is a wholly owned subsidiary of Westech, and, during the period the Company operated, was the operating entity.  Tejas is a FINRA registered broker dealer.
[14] Exhibit 1, ¶ 13.
[15] Exhibit 1, ¶ 17 and Exhibit B.
[16] Exhibit 1, ¶ 17 and Exhibit B, § 2.
[17] Exhibit 1, ¶ 19 and Exhibit B, § 2.

F.      The Halder Employment Agreement had an initial term of three years that expired on September 30, 2014.[18]  After the expiration of the initial term, the Halder Employment Agreement was set to renew automatically for an additional two years unless either party gave written notice of termination to the other party at least one hundred twenty (120) days prior to the end of the initial term.[19]  The Halder Employment Agreement specified that "[o]nly the Board (with [Halder] recusing himself from the Board's discussion and abstaining from the Board's vote) shall have the right to terminate [Halder]."[20]

G.      The Halder Employment Agreement also contained non-competition and non-solicitation obligations during the Initial Term, and for at least one year after its termination.[21]

H.      Since mid-2013, there had been a struggle for control of Westech between John Gorman (then the largest shareholder of Westech), on the one-hand, and a faction consisting of Halder, Salamone, and others, on the other hand.[22]

I.      Both factions filed suit against the other pursuant to 8 *Del. C.* § 225, seeking confirmation of the composition of the Westech Board.[23]

J.      Thereafter, the Court of Chancery entered a Status Quo Order, on September 4, 2013 (the "Status Quo Order"), that certain actions were prohibited by the parties, inclusive of "their affiliates, subsidiaries, agents, servants, employees, attorneys, or any person acting knowingly in concert with them."[24]  The Court prohibited "spending or transferring any funds, or other property interests of Westech or Tejas except in the ordinary course of business

---

[18] Exhibit 1, ¶ 20 and Exhibit B, § 3.
[19] Exhibit 1, ¶ 20 and Exhibit B, § 3.
[20] Exhibit 1, ¶ 20 and Exhibit B, § 2.
[21] Exhibit 1, ¶ 21 and Exhibit B, § 8(a).
[22] Exhibit 1, ¶ 23.
[23] Exhibit 1, ¶ 24.
[24] Exhibit 1, ¶¶ 26-27 and Exhibit E, ¶ 2.

of Westech or Tejas (as that business has been conducted since January 15, 2013)" without providing ten (10) days notice to the Court and all other parties so that there was sufficient time for the parties to object.[25]

      K.    On May 30, 2014, Halder and Salamone (acting as CEO on behalf of Westech) executed a document titled "Cancellation of Employment Agreement" (the "Cancellation Agreement"), purporting to prospectively terminate Halder's Employment Agreement.[26]  The Cancellation Agreement provides that: "the parties agree that the [Halder Employment Agreement] was breached by [Westech] including Section 4 thereof, and that the [Halder Employment Agreement] has expired by its terms."  The Cancellation Agreement further provides that:  "the [Halder Employment Agreement] is terminated in its entirety and the only continuing obligation of either party under the [Halder Employment Agreement] is the obligation of the Company to pay the Accrued Obligations existing as of the date hereof."  The parties to the purported Cancellation Agreement clarified that "all other rights and obligations of either party under the [Halder Employment Agreement], including, without limitation,… the restrictive covenants contained in Section 8 of the [Halder Employment Agreement], are of no further force or effect."

      L.    The Westech Board never received advance notice of or approved the Cancellation Agreement.  Under Westech's Bylaws, the Halder Employment Contract and the Status Quo Order, Salamone did not have authority to unilaterally execute the Cancellation Agreement.  Issues relating to Halder's employment were reserved for the Westech Board.  As CEO, Salamone did not have authority to terminate Halder's employment.[27]

---

[25] Exhibit 1, ¶ 27 and Exhibit E, ¶ 2(b).
[26] Exhibit 1, ¶ 36 and Exhibit K.
[27] Exhibit 1, ¶ 37.

M.      Halder formally resigned from his employment with Westech and Tejas, on July 2, 2014.[28]

N.      By July 15, 2014, Halder had registered as a broker with a competing broker dealer, Clearview Trading Advisors, Inc. ("CTA").[29]  Like Tejas, CTA is a broker-dealer, and CTA was a competitor of Tejas at the time.  Halder succeeded in soliciting key employees to leave Tejas and join CTA, in direct violation of his and those employees' employment agreements with Tejas.  Upon information and belief, Salamone has performed material consulting services for CTA.[30]

O.      On August 25, 2014, Halder filed suit against Westech and Gorman in the State District Court of Travis County, Texas (the "Halder Action") to, among other things, obtain a declaration that the Cancellation Agreement was "a binding and enforceable agreement."  *Halder v. Westech Capital Corp.,* Cause No. D-1GN-14-003190.[31]  Westech, under the control of Salamone, refused to contest the suit.  On October 18, 2014, Gorman filed a letter with the Court of Chancery asking that the Court require the Company to file a "general denial" to preserve Westech's rights with respect to the Halder Action.  Salamone opposed Gorman's request in a letter dated October 19, 2014.[32]  The next day, the Court of Chancery ordered Westech to seek a stay of the Halder Action until the Delaware courts could determine which individuals constituted the Westech Board.  Westech filed the requisite motion to stay on October 20, 2014.  The Texas District Court stayed the action by order dated November 26, 2014.  To date, the Halder Action remains pending and unresolved.[33]

---

[28] Exhibit 1, ¶ 44 and Exhibit M, ¶ 2 (Affidavit of Robert W. Halder).
[29] Exhibit 1, ¶ 48 and Exhibit N. (In its paragraph 48, the Derivative Lawsuit incorrectly references Exhibit O, rather than Exhibit N.)
[30] Exhibit 1, ¶ 48.
[31] Exhibit 1, ¶ 57.
[32] Exhibit 1, ¶ 60.
[33] Exhibit 1, ¶ 61.

P.     One of the first bankruptcy actions pursued by Westech under the control of Salamone and Halder, is a motion to lift stay for the purpose of calling a shareholders' meeting.  (Doc. #9.)  The Company has no operations, so the need for such a meeting is not clear.

Q.     Management's proposed slate of directors to be voted in at the shareholders' meeting included Salamone, Halder, their ally Mike Dura,[34] and Westech's judgment debtor, James Fellus.[35]  *See* **Exhibit 2** (Notice of Annual Meeting of Stockholders of Westech Capital Corp.).

13.     The foregoing conduct established that Westech's current control persons are not acting in the best interest of the Company or the estate.  Indeed, they have been engaged in a series of actions which intentionally caused the demise of the Company, benefitted themselves at the expense of the Company, and sought to protect themselves from liability at the expense of the Company and the estate.

14.     For these reasons Movants request the appointment of a Chapter 11 Trustee to review, investigate, and, if appropriate continue to pursue, the claims against the insiders and their counsel.  Absent the appointment of a trustee, the insiders have self-interests in conflict with their fiduciary duty to maximize the recovery of the estate.

## ARGUMENTS AND AUTHORITIES

15.     11 U.S.C. § 1104 provides, in pertinent part:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –

---

[34] Exhibit 1, ¶ 8.
[35] Exhibit 1, ¶ 4.

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

16.    Ordinarily, there is a presumption that the debtor-in-possession should be permitted to remain in control because current management is familiar with the business and in the best position to maneuver the process of rehabilitation for the benefit of creditors and the interests of the estate. *See e.g., In re Intercat, Inc.,* 247 B.R. 911, 920, 920 (Bankr. S.D. Ga. 2000). The presumption normally afforded to Chapter 11 debtors-in-possession has no place in this case. As noted above, there is no pretext of reorganization or rehabilitation in this case.

17.    In this case, appointment of an independent trustee is warranted under either § 1104(a)(1) or (2).

18.    **Appointment under Section 1104(a)(1)**: The only question presented under Section 1104(a)(1) is whether the acts and omissions of the current management, committee before or after the filing of the Chapter 11 petition, trigger the appointment of a trustee. *In re V. Savino Oil & Heating Co., Inc.,* 99 B.R. 518, 526 (Bkrtcy. E.D.N.Y. 1989). Here, cause exists for the appointment of a trustee Section 1104(a)(1) because of the fraud, dishonesty, incompetence, and gross mismanagement of the affairs of Debtor by current management, both before and after the filing of the case as summarized in this Motion. As long as current management is in place, there will be substantial or continuing loss to or diminution of the estate.

19.     Once court has found that cause exists for appointment of a trustee, it has no discretion and must approve a trustee.  *In re V. Savino Oil & Heating Co., Inc.,* 99 B.R. 518, 525 (Bkrtcy. E.D.N.Y. 1989); *In re Oklahoma Refining Co.,* 838 F.2d 1133, 1136 (10th Cir. 1988). Here, self-dealing and misconduct exist, as witnessed by the derivative suit currently pending in Delaware and the collusion between Salamone and Halder regarding Halder's non-competition agreement with Westech.

20.     **Appointment under Section 1104(a)(2):** Under Section 1104(a)(2), a showing of "cause" is not required, the standard is flexible, and courts "'look to practical realities and necessities.'"  *In re Euro-American Lodging Corp.,* 365 B.R. 421, 427-28 (Bankr. S.D.N.Y. 2007).  "Among the factors considered are: (i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation; (iii) the confidence—or lack thereof—of the business community and of creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment."  *In re Ionosphere Clubs, Inc.,* 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990) (internal citations omitted).  Where the debtor and managers have conflicts of interest, an independent trustee should be appointed under Section 1104(a)(2).  *In re Euro-American Lodging Corp.,* 365 B.R. at 428; *see also In re Eurospark Industries, Inc.,* 424 B.R. 621 (Bankr. E.D.N.Y. 2010) (appointing trustee where interests of debtor and creditors were in conflict). Here, the appointment of a trustee is also appropriate under Section 1104(a)(2) because the Debtor and its control persons are untrustworthy and riddled with conflicts such that an independent trustee is in the best interest of the estate, the equity holders, the parties in interest and the creditors.

21.     Movants offer a proposed order as **Exhibit 3**.

WHEREFORE PREMISES CONSIDERED, Movants pray that the Court appoint a trustee under 11 U.S.C. § 1104(a)(1) and/or (2) and that Movants shall have such other and further relief to which they may be justly entitled.

DATED: April 21, 2016.

Respectfully Submitted,

/s/   *B. Russell Horton*
B. Russell Horton
Texas Bar No. 10014450
D. Douglas Brothers
Texas Bar No. 03084500
GEORGE BROTHERS KINCAID & HORTON, LLP
114 West 7th Street, Suite 1100
Austin, Texas 78701
rhorton@gbkh.com
dbrothers@gbkh.com
512-495-1400
512-499-0094 (facsimile)

**ATTORNEYS FOR ERIC STEINHAFEL, ROBERT CLEMENT, RICK SCHOTTENFELD, AND ARCH APLIN**

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of April 2016, a true and correct copy of the above and foregoing document was served via electronic means on all parties of interest participating in the CM/ECF system.

/s/   *B. Russell Horton*
B. Russell Horton

**CASE NO. 16-10300**
**WESTECH CAPITAL CORP.**

**Limited Service List as of April 12, 2016**

**DEBTOR**:
Westech Capital Corp.
c/o Gary Salamone, CEO
13501 Galleria Circle
Suite W-240
Austin, TX 78738
 gary.salamone@prexcapital.com

**DEBTOR'S COUNSEL:**
Stephen A. Roberts Duane J. Brescia
STRASBURGER & PRICE, LLP
720 Brazos St., Suite 700
Austin, TX 78701
Phone (512) 499-3600
Fax (512) 499-3660
Stephen.roberts@strasburger.com
Duane.brescia@strasburger.com

Andrew G. Edson
Strasburger & Price, LLP
901 Main Street, Suite 4400
Dallas, Texas  75202
Phone (214) 651-2047
Fax (214) 659-4084
Andrew.edson@strasburger.com

**UNITED STATES TRUSTEE:**
Deborah A. Bynum
Office of the U.S. Trustee
903 San Jacinto, Room 230
Austin, TX 78701
Deborah.a.bynum@usdoj.gov

## TOP TWENTY UNSECURED CREDITORS:

Greenberg Traurig, LLP
300 W. 6th Street
Suite 2020
Austin, TX 78701

Merlin Group Holdings, LLC
101 California Street, Suite 3050
San Francisco, CA  94111

NetJets, Inc.
4111 Bridgeway Ave.
Columbus, OH 43219

Morgan Lewis Bockius, LLP
101 Park Avenue
New York, NY 10178

Wilmer Hale
60 State Street
Boston, MA 02109

Crowell Mooring
1001 Pennsylvania NW Floor 10
Washington, DC 20004

Richards Layton & Finger, PA
920 King Street
Wilmington, DE 19801

## OTHER PARTIES:

United States Securities and Exchange Commission
Fort Worth Regional Office
Shamoil Shiphandler, Regional Director
801 Cherry Street, Suite 1900, Unit 18
Fort Worth, TX 76102

United States Attorney General
Western District of Texas
816 Congress, Suite 100
Austin, TX 78701

## EQUITY SECURITY HOLDERS

Thomas J. Alfuth
224 Agusta Way
North Prairie, WI 53153

Arch Aplin
c/o Buc-ee's
327 Highway 2004
Lake Jackson, TX 77566

Steven A. Audi
147 W 79th St Apt 4D
New York, NY 10024

Craig Biddle
2303 Greenlee Dr.
Austin, TX 78703

Cede & Co
570 Washington Blvd
Central Delivery Reorg
Jersey City, NJ 07310

William G Clark
7 Fieldview Lane
Califon, NJ 07830

Robert L Clement
1504 Marshall Lane
Austin, TX 78703

Delaware Charter TR IRA of Heidi Gil Roth
4310 Merrell Rd
Dallas, TX 75229

Michael Fellus
3 Filomena Ct.
Dix Hills, NY 11716

James Fellus
3 Filomena Ct.
Dix Hills, NY 11716

Joshua Fellus
3 Filomena Ct.
Dix Hills, NY 11716

Odette Fellus
3 Filomena Ct.
Dix Hills, NY 11716

Odette Fellus Cust. for Daniel Fellus
UTMA
3 Filomena Ct.
Dix Hills, NY 11716

Odette Fellus Cust. for Gabriel Fellus
UTMA
3 Filomena Ct.
Dix Hills, NY 11716

Odette Fellus Cust. for Rachael Fellus
UTMA
3 Filomena Ct.
Dix Hills, NY 11716

Terrance Ford
12022 Winwood Lane
Houston, TX 77024

Harry Friedberg
Apex Clearing Corp. Custodian
350 N. St. Paul St., Suite 1300
Dallas, TX 75201

Harry Friedberg
IRA Rollover
Penson Financial Services Inc Custodian
1981 Marcus Ave, 2nd Floor
Lake Success, NY 11042

John Glade
Apex Clearing Corp. Custodian
350 N. St. Paul St., Suite 1300
Dallas, TX 75201

John Glade
IRA Rollover
Penson Financial Services Inc Custodian
1981 Marcus Ave, 2nd Floor
Lake Success, NY 11042

John Gorman IV
5404 Maryanna Drive
Austin, TX 78746

John Gorman V Roth IRA
John Gorman IV, Custodian Roth IRA Rollo
5404 Maryanna Drive
Austin, TX 78746

John J Gorman
5404 Maryanna Drive
Austin, TX 78746

John J Gorman IV Roth IRA #2
5404 Maryanna Drive
Austin, TX 78746

John J Gorman IV Roth IRA #3
5404 Maryanna Drive
Austin, TX 78746

John Joseph Gorman Exempt TR
5404 Maryanna Drive
Austin, TX 78746

Ryleigh Gorman Exempt Trust
5404 Maryanna Drive
Austin, TX 78746

Ryleigh H Gorman Roth IRA John Gorman IV, Custodian
5404 Maryanna Drive
Austin, TX 78746

Ryleigh H. Gorman Exempt Trust
5404 Maryanna Drive
Austin, TX  78746

Tamra Gorman
5404 Maryanna Drive
Austin, TX 78746

Ashley Halder
Penson Financial Services, Inc. Custodian
1981 Marcus Ave., 2nd FL
Lake Success, NY 11042

Ashley Halder
Apex Clearing Corp. Custodian
350 N. St. Paul St., Suite 1300
Dallas, TX 75201

Robert Halder
Apex Clearing Corp. Custodian
350 N. St. Paul St., Suite 1300
Dallas, TX 75201

Robert Halder
IRA Rollover
Penson Financial Services Inc Custodian
1981 Marcus Ave., 2nd Floor
Lake Success, NY 11042

Robert Halder
4203 Lakeway Blvd.
Austin, TX 78734

Samantha Halder
Roth IRA
Penson Financial Services Inc
1981 Marcus Ave, 2nd Floor
Lake Success, NY 11042

Samantha Halder
Apex Clearing Corp. Custodian
350 N. St. Paul St., Suite 1300
Dallas, TX 75201

Sophia Halder
Apex Clearing Corp. Custodian
350 N. St. Paul St., Suite 1300
Dallas, TX 75201

Sophia Halder
Roth IRA
Penson Financial Services Inc Custodian
1981 Marcus Ave 2nd Floor
Lake Success, NY 11042

Dan Huth
10 Robin Road
Wayne, NJ 07470

The Inglehart Family Trust DTD
7791 William A Inglehart TTE
5404 Maryanna Drive
Austin, TX 78746

Jeffrey D Lavaty
5477 Carter Rd
Lake Mary, FL 32746

Avery Martin
Apex Clearing Corp. Custodian
350 N. St. Paul St., Suite 1300
Dallas, TX 75201

Avery Martin
IRA
Penson Financial Services Inc Custodian
1981 Marcus Ave, 2nd Floor
Lake Success, NY 11042

Timothy R. Martin
9226 Jollyville Rd #151
Austin, TX 78759

Sandy Mayerson
Manuel Mayerson
136 E 64th St. #11E
New York, NY 10021

Robert W McDonald III CUST Zachary Clark McDonald UGMA TX
2110 A Boca Raton Dr., Ste 206
Austin, TX 78747

Pershing LLC PO Box 2050
Jersey City, NJ 07303

RBC Dain Rauscher Inc.
510 Marquette Ave
Minneapolis, MN 55402

John Rafael Revocable Trust
5 Columbine Lane
Valley Stream, NY 11581

Michael Rafael 2008 Trust
5 Columbine Lane
Valley Stream, NY 11581

Tara Rafael 2005 Trust
5 Columbine Lane
Valley Stream, NY 11581

John S Randolph
IRA Rollover
Penson Financial Services Inc Custodian
1981 Marcus Ave., 2nd Floor
Lake Success, NY 11042

John S Randolph
5706 Merrywing Circle
Austin, TX 78730

John S. Randolph
Apex Clearing Corp. Custodian
350 N. St. Paul St., Suite 1300
Dallas, TX 75201

Chris Roberts
Apex Clearing Corp. Custodian
350 N. St. Paul St., Suite 1300
Dallas, TX 75201

Chris Roberts
IRA
Penson Financial Services Inc Custodian
1981 Marcus Ave., 2nd Floor
Lake Success, NY 11042

Chris Roberts
1800 Lakeshore Dr.
Austin, TX 78746

James Britton Rodgers
Apex Clearing Corp. Custodian
350 N. St. Paul St., Suite 1300
Dallas, TX 75201

James Britton Rodgers
IRA Rollover
Penson Financial Services Inc Custodian
1981 Marcus Ave., 2nd Floor
Lake Success, NY 11042

SNL Securities LP
212 7th St NE
Charlottesville, VA 22902-5307

Samir Shah
272 Blackberry Drive
Stamford, CT 06903

Sherleigh Associates Inc. Jack Silver Trustee
920 5th Ave #3B
New York, NY 10021

Eric Steinhafel
Lori Papa Steinhafel
16975 Patricia Lane
Brookfield, WI 53005

Richard J. Tanaka
Kathleen K Tanaka JT TEN
1015 Finnsbury Dr
Roswell, GA 30075

Michael J. Tannenholtz
250 West 54th St., Suite 703
New York, NY 11706

A J Waight Jr. Box 44
Willow City, TX 78675

Jeffrey S. Weiss
419 Weymouth Drive
Wyckoff, NJ 07481

Barry Williamson
702 Crystal Creek
Austin, TX 78746

Michael Wolf
201 Lavaca St., #412
Austin, TX 78701

Michael Wolf
Apex Clearing Corp. Custodian
350 N. St. Paul St., Suite 1300
Dallas, TX 75201

Michael Wolf, Custodian
Penson Financial Services, Inc.
1981 Marcus Ave., 2nd FL
Lake Success, NY 11042

Greg Woodby
IRA Rollover
Penson Financial Services Inc Custodian
1981 Marcus Ave., 2nd Floor
Lake Success, NY 11042

Greg Woodby
Apex Clearing Corp. Custodian
350 N. St. Paul St., Suite 1300
Dallas, TX 75201

Greg Woodby
3100 Riva Ridge
Austin, TX 78746

## **ATTORNEY FOR JOHN GORMAN**

Kell C. Mercer
Kell C. Mercer, P.C.
1602 E. Cesar Chavez Street
Austin, Texas 78701
(512) 627-3512 Tel
(512) 597-0767 Fax
Kell.mercer@mercer-law-pc.com